UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

ROBERT L.,                              )
                                        )
        Plaintiff                       )
                                        )
v.                                      )   No. 1:17-cv-00348-JDL
                                        )
NANCY A. BERRYHILL,                     )
*Acting Commissioner of Social Security,* )
                                        )
        Defendant                       )

## REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge ("ALJ") supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the bases that the ALJ erroneously deemed his back and Mollaret's meningitis conditions nonsevere, underestimated the extent of his mental limitations, and rejected the opinions of two treating sources out of hand, resulting in an allegedly flawed residual functional capacity ("RFC") determination. *See* Plaintiff's Itemized Statement of Errors ("Statement of Errors") (ECF No. 13) at 4-15. He asserts that these errors, in turn, undermined the ALJ's reliance on the testimony of a vocational expert, predicated on the faulty RFC determination. *See id.* at 16-17. I find no error and, accordingly, recommend that the court affirm the commissioner's decision.

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through June 30, 2013, Finding 1, Record at 17; that he had the severe impairments of an affective disorder and an anxiety disorder, Finding 3, *id*.; that he had the RFC to perform a full range of work at all exertional levels, but with the following nonexertional limitations: he was limited to performing simple, routine tasks, could manage frequent contact with coworkers but no contact with the general public, and could make simple work-related decisions, Finding 5, *id*. at 21; that, considering his age (51 years old, defined as an individual closely approaching advanced age, on his alleged disability onset date, April 9, 2013), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 7-10, *id*. at 24; and that he, therefore, had not been disabled from April 9, 2013, through the date of the decision, June 1, 2016, Finding 11, *id*. at 25. The Appeals Council declined to review the decision, *id*. at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The statement of errors also implicates Step 2 of the sequential evaluation process. Although a claimant bears the burden of proof at Step 2, it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Sec'y of Health & Human Servs.*, 795 F.2d 1118, 1124 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* (quoting Social Security Ruling 85-28).

## I. Discussion

### A. The ALJ's Step 2 Determination

The plaintiff first argues that the ALJ erred in deeming his back impairment and Mollaret's meningitis nonsevere at Step 2. *See* Statement of Errors at 4-7. I find no error and, in any event, conclude that the plaintiff fails to demonstrate that any error was outcome-determinative. *See, e.g., Bolduc v. Astrue*, Civil No. 09-220-B-W, 2010 WL 276280, at *4 n.3 (D. Me. Jan. 19, 2010) ("an error at Step 2 is uniformly considered harmless, and thus not to require remand, unless the [claimant] can demonstrate how the error would necessarily change the outcome of [his or her] claim").

### 1. Back Impairment

The ALJ explained that, although the plaintiff had complained of back pain, he found his back impairment nonsevere, citing a report of agency examining consultant David Axelman, M.D., that the plaintiff "ha[d] maintained normal gait, strength and sensation with negative straight-leg raise testing" and the opinions of agency nonexamining consultants J.H. Hall, M.D., and Stephanie Green, M.D., that he had no functional limitations as a result of his back condition. Record at 19-20; *see also id*. at 129-30 (Hall opinion dated November 18, 2013), 156-57 (Green opinion dated April 30, 2014), 448-51 (Axelman report dated November 13, 2013).

The plaintiff argues that, to the contrary, the record supports a finding that, in the wake of a 1991 workplace accident in which he fell two stories, fracturing his back, he continues to suffer residual effects that have "far more than a minimal effect on his ability to work." Statement of Errors at 4. He points to (i) evidence of back abnormalities on objective testing in 2008 and 2011, (ii) an assessment by treating physician David Hallbert, M.D., on February 12, 2014, of acute low back pain, followed by Dr. Hallbert's observations on March 17, 2014, of slow ambulation, abnormal motor strength, and limited range of motion, (iii) notations by other treating and examining physicians of gait disturbances, and (iv) his own testimony at hearing that he had difficulty handling a jug of milk and walking. *See id*. at 4-5.

He contends that the error in failing to find a severe back impairment is not harmless because, "[h]ad the ALJ properly credited the evidence of a back impairment limiting [him] to sedentary work," he would have been deemed disabled pursuant to the so-called "Grid," Appendix 2 to Subpart P, 20 C.F.R. Part 404, as of his alleged disability onset date, and if the ALJ had found him limited to light work, he would have been deemed disabled pursuant to the Grid as of May 2, 2016, the date he turned 55. *Id*. at 6 (citing Grid §§ 201.04, 202.04). At oral argument,

4

his counsel alternatively argued that, even if the ALJ did not err in finding his back impairment nonsevere, he erred in failing to include resulting limitations in his assessed RFC. *See* 20 C.F.R. §§ 404.1523(c), 416.923(c) ("[W]e will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.").

That the plaintiff points to evidence supporting a finding of a severe back impairment does not carry the day. As the commissioner rejoins, *see* Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 22) at 3-5, the ALJ identified substantial evidence, in the form of the Axelman, Hall, and Green opinions, that the plaintiff's back impairment was nonsevere, *see* Record at 19-20. The plaintiff's argument, hence, amounts to an unavailing request that the court reweigh conflicting record evidence. *See, e.g., Rodriguez*, 647 F.2d at 222 ("The [commissioner] may (and, under [her] regulations, must) take medical evidence. But the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for [her], not for the doctors or for the courts.").

In any event, the plaintiff fails to demonstrate that any error in assessing his back impairment was outcome-determinative. He assumes that, upon finding a severe back impairment, the ALJ would have deemed him limited to sedentary or light-level work, *see* Statement of Errors at 6, but points to no evidence that would have compelled such a conclusion. Nor does he identify any restrictions that should have been assessed upon a finding that he had a nonsevere back impairment. While, at oral argument, the plaintiff's counsel contended that the adoption of Dr. Hallbert's physical RFC opinion would have resulted in a finding of a limitation to sedentary work, I have concluded that the plaintiff's separate challenge to the ALJ's rejection of that opinion is unavailing, for the reasons discussed below.

5

### 2. Mollaret's Meningitis

The plaintiff concedes that, while his Mollaret's meningitis, first diagnosed in 1982, is a chronic condition with periodic painful flare-ups, he was asymptomatic during the period at issue. *See id.* at 6-7. Nonetheless, he argues that the ALJ should have "considered it a severe condition because of the chronic nature of the disease and because of its immobilizing characteristics when it is symptomatic." *Id*. at 7.

This argument is without merit. Because, as the ALJ noted, there were "no medical records of any signs or symptoms attributed to" the plaintiff's Mollaret's meningitis, Record at 19, he properly found it nonsevere. In any event, even had the ALJ erred in so finding, the plaintiff fails to demonstrate that any specific limitations should have been assessed as a result of the condition.

### B. The ALJ's Mental RFC Assessment

The plaintiff next argues that the ALJ erred in three respects in determining his mental RFC: in (i) deeming him capable of frequent contact with coworkers, (ii) leaving "an additional unresolved issue" regarding his ability to respond appropriately to coworkers and supervisors, and (iii) finding him capable of making simple work-related decisions. *See* Statement of Errors at 7-13. Again, I find no error.

### 1. Frequent Contact with Coworkers

The plaintiff first contends that the ALJ's finding that he could have frequent contact with coworkers is unsupported by expert opinion, including the expert opinions on which the ALJ purported to rely. *See id.* at 8-10. I disagree.

The ALJ gave great weight to the opinions of agency examining consultant Jonathan Siegel, Ph.D., and agency nonexamining consultants Brian Stahl, Ph.D., and John J. Warren, Ed.D., partial weight to the opinions of agency examining consultant John S. Hale, Jr., Ed.D., and

6

treating mental health provider Deborah Ort, PMHNP-BC ("N.P. Ort"), and little weight to the mental RFC opinion of Dr. Hallbert. *See* Record at 22-24.

> In describing the plaintiff's vocational history Dr. Siegel stated, in relevant part:
>
> In the year 2007 he returned again to automotive sales until eventually apparently being let go as a result of difficulties managing his anger. Note that when asked specifically about this issue the [plaintiff] notes difficulties with anger management since early childhood. Asked about particular triggers for this reported anger [he] was unable to be more specific but says, "I have a very explosive personality.". . . Paradoxically, when asked by the undersigned about his relationships on the job the [plaintiff] responded by saying, "I get along well with people."

*Id*. at 442-43. On mental status examination, Dr. Siegel found, in relevant part:

> Regarding the [plaintiff]'s affective presentation today note again that he came to today's interview in a somewhat anxious and agitated manner although this did dissipate with the establishment of rapport. At the same time, when answering questions about the alleged post-traumatic stress disorder related to the death of his father he became noticeably more agitated and unresponsive.

*Id*. at 444. Finally, in a Psychological Source Statement, Dr. Siegel stated, in relevant part:

> Regarding [the plaintiff's] ability to make occupational adjustments he describes himself as getting along well with people on the job but at the same time notes episodes of difficulty controlling angry affect. It is the impression of the undersigned based on his self-report and presentation today that his ability to relate to coworkers, supervisors, and the public would be very uneven and certainly poor at times.

*Id*. at 445.

Drs. Stahl and Warren both indicated that they gave the Siegel opinion great weight. *See id*. at 132, 160. Dr. Stahl concluded that the plaintiff was "not able to work with the public but can work with coworkers and supervisors[,]" explaining, "He says he has anger difficulties but then says he has gotten along well with others on the job." *Id*. at 133. Dr. Warren concluded that the plaintiff was "able to sustain the basic demands associated with relating adequately with supervisors/co-workers" but "[u]nable to interact appropriately with the general public." *Id*. at 161.

7

The plaintiff argues that the ALJ's finding that he could have frequent contact with coworkers is unsupported by either the Stahl or Warren opinion because neither expressed any opinion concerning the frequency of such contact, and Dr. Warren deemed him moderately limited in his ability to get along with coworkers or peers and maintain socially appropriate behavior. *See* Statement of Errors at 8; Record at 161. He contends that the finding also is unsupported by the Siegel opinion because Dr. Siegel described his ability to relate to coworkers and supervisors as uneven and poor at times. *See* Statement of Errors at 8. He asserts that, at best, there is support only for the proposition that he could meet the basic demands of unskilled work in dealing with coworkers and supervisors, defined to include the ability on a sustained basis "'to <u>respond appropriately to</u> supervision, coworkers, and usual work situations.'" *Id*. (quoting Social Security Ruling 85-15, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 ("SSR 85-15"), at 347) (emphasis added by plaintiff). He argues that "the ability to 'respond appropriately' does not equate to the capacity for 'frequent contact.'" *Id*. at 8-9.

He reasons that, as a result, "the ALJ impermissibly substituted his judgment for that of the medical experts . . . [by inserting] a durational component to [the plaintiff's] ability to interact with co-workers that is not supported by the record[,]" *id*. at 9-10, in contravention of established First Circuit authority, *see, e.g. Manso-Pizarro*, 76 F.3d at 17 ("With a few exceptions, . . . an ALJ, as a lay person, is not qualified to interpret raw data in a medical record.").

I find no error. As the commissioner rejoins, *see* Opposition at 8, the omission of any durational limitation from the Stahl and Warren opinions supports, rather than undercuts, a finding that the plaintiff could have frequent contact with supervisors and coworkers. Indeed, Dr. Stahl expressly relied on Dr. Siegel's notation that, although the plaintiff reported that he had anger management difficulties, he also stated that he had gotten along well with others – presumably

8

both supervisors and coworkers – on the job. *See* Record at 133, 442-43. Nothing in the quoted portion of SSR 85-15 counsels otherwise: that definition contains no durational component and contemplates an ability to undertake activities "on a sustained basis[.]" SSR 85-15 at 347.

Further, the ALJ expressly discounted Dr. Siegel's finding that the plaintiff's ability to relate to coworkers and supervisors would be poor and uneven as "based upon the [plaintiff]'s self-report." Record at 22; *see also id.* at 445. An ALJ may discount a medical opinion if he or she "reasonably conclude[s] that [the opinion] relied excessively on [a] claimant's subjective complaints, rather than on objective medical findings." *Rodriguez Pagan v. Sec'y of Health & Human Servs.*, 819 F.2d 1, 3 (1st Cir. 1987).[2]

### 2. Alleged Unresolved Issue Regarding Ability To Respond to Coworkers

The plaintiff next argues that, in giving great weight to the Siegel, Stahl, and Warren opinions, the ALJ failed to resolve the conflict between Dr. Siegel's opinion that his ability to relate to coworkers and supervisors would be poor and uneven and the Stahl and Warren opinions, which Drs. Stahl and Warren themselves had failed to address. *See* Statement of Errors at 10-11. He cites *Parker v. Colvin*, No. 1:15-cv-00446-JHR, 2016 WL 4994997, at *5 (D. Me. Sept. 19, 2016), for the proposition that it is reversible error for an ALJ to purport to adopt the opinion of a medical expert without explaining why certain portions of the opinion were omitted. *See id.* at 11. Again, I find no error.

As noted above, the ALJ specifically declined to credit the portion of Dr. Siegel's report at issue here, finding that it was based on the plaintiff's self-report and not on objective medical

---

[2] At oral argument, the plaintiff's counsel took issue with the ALJ's resolution of this conflict, observing that Dr. Siegel stated that his opinion concerning the plaintiff's ability to relate to coworkers, supervisors, and the public was based not only on the plaintiff's self-report but also on his "presentation today[.]" Record at 445. Nonetheless, Dr. Siegel himself stated that the plaintiff's self-report of emotional instability was "only minorly in evidence" on the day of the examination. *Id.*

9

evidence. *See* Record at 22. Further, Dr. Stahl alluded to and implicitly resolved the apparent conflict in the Siegel report, explaining, "[the plaintiff] says he has anger difficulties but then says he has gotten along well with others on the job." Record at 133. Thus, both Dr. Stahl and the ALJ acknowledged and addressed the issue, distinguishing this case from *Parker*.

### 3. Ability To Make Simple Work-Related Decisions

The plaintiff next argues that the ALJ erred in finding that he had the ability to make simple work-related decisions, asserting that his reliance on the Stahl and Warren opinions was misplaced because they were "stale." Statement of Errors at 11-13. The commissioner rejoins, and I agree, that the evidence unseen by Drs. Stahl and Warren does not call into question their conclusion that the plaintiff retained the ability to make simple work-related decisions. *See* Opposition at 10-17.

The opinion of Dr. Stahl is dated November 19, 2013, and that of Dr. Warren, May 14, 2014. *See* Record at 134, 159. The plaintiff points out that Drs. Stahl and Warren did not have the benefit of review of (i) the May 2014 report of Dr. Hale, (ii) progress notes of N.P. Ort for the period from March 2014 through February 2016,[3] and (iii) records detailing his involuntary hospitalization for psychotic symptoms from March 8-21, 2016. *See* Statement of Errors at 11-12. He asserts that these unseen records were consistent with his own testimony at hearing that he was fired from a position for failure to meet production standards due to his emotional difficulties and his need for frequent bathroom breaks. *See id.* at 13; Record at 43-44.

Nonetheless, as the commissioner points out, *see* Opposition at 10-11, the fact that an agency nonexamining consultant has not reviewed the full record is not necessarily fatal to an ALJ's reliance on that consultant's opinion. While "there is no bright-line test of when reliance on a nonexamining expert consultant is permissible in determining a claimant's physical or mental

---

[3] The plaintiff notes that both Drs. Stahl and Warren reviewed three treatment notes of N.P. Ort, covering the period from June 6, 2013, through August 15, 2013. *See* Statement of Errors at 12; Record at 128-29, 157.

RFC[,] [f]actors to be considered include the completeness of the consultant's review of the full record and whether portions of the record unseen by the consultant reflect material change or are merely cumulative or consistent with the preexisting record and/or contain evidence supportably dismissed or minimized by the [ALJ]." *Brackett v. Astrue*, No. 2:10-cv-24-DBH, 2010 WL 5467254, at *5 (D. Me. Dec. 29, 2010) (rec. dec., *aff'd* Jan. 19, 2011) (citations omitted). I agree with the commissioner that, in this case, the records at issue do not undermine the ALJ's reliance on the Stahl and Warren opinions.

Turning first to the Hale report, while Dr. Stahl did not have the benefit of review of that record, Dr. Warren did. *See* Record at 128-29, 152, 157. Beyond this, the ALJ supportably accorded the Hale opinion only partial weight. As the plaintiff notes, *see* Statement of Errors at 12, Dr. Hale found, *inter alia*, that his concentration was "at times . . . somewhat problematic[,]" his "memory tend[ed] to be a problem intermittently[,]" he "likely would need monitoring in the work place[,]" and his "apathy and low energy level likely would limit his ability to persist at a reasonable pace at work[,]" Record at 469-70. Yet, the ALJ deemed Dr. Hale's opinion that the plaintiff had memory problems "inconsistent with" his own observations that the plaintiff "presented with average intellectual ability and had no identified problems with the form of his thinking" and that his "daily activities [we]re intact." *Id*. at 23.

Turning to the Ort notes, the plaintiff asserts that these reflect that his "thought content was hopeless, helpless and reflected poor confidence/low self-esteem, all characteristics that are seemingly incompatible with independent decision-making." Statement of Errors at 12 (citing Record at, *inter alia*, 548, 554, 560, 566, 572). He adds that N.P. Ort repeatedly stated that "'depression ma[de] it difficult for him to get out of bed on a regular basis to meet basic work requirements.'" *Id.* (quoting Record at, *inter alia*, 538-39, 544, 550, 556, 562, 568, 574). Yet, as

11

the commissioner points out, *see* Opposition at 11-12, the later Ort notes are cumulative of those seen by Drs. Stahl and Warren, which contain the same findings, *see* Record at 421-38.

The final set of records at issue document the plaintiff's two-week hospitalization in March 2016 for manic behavior and delusional thinking, culminating in diagnoses at discharge of "Bipolar disorder, type 1, currently manic, with psychotic features, severe; rule out amphetamine-induced psychosis." *Id*. at 532.[4] The plaintiff points out that he was noted during that hospitalization to have "impaired attention and concentration as evidenced by easily distracted/irritated[,]" implicating his ability to maintain concentration, persistence, and pace. Statement of Errors at 13 (quoting Record at 526).

Yet, as the commissioner persuasively argues, *see* Opposition at 14, the hospitalization records do not call the Stahl and Warren opinions into doubt. The ALJ addressed those records, noting that the plaintiff's treating physician was uncertain whether his manic symptoms were "due to an amphetamine-induced psychosis or to Bipolar I disorder" and that the plaintiff "did respond to treatment with no indications of follow-up care." Record at 19 (citation omitted). As the commissioner observes, the plaintiff "fail[s] to show that this isolated hospitalization establishes functional limitations meeting the [12-month] durational requirement such that it could undermine the other earlier evidence of record." Opposition at 14.

---

[4] The plaintiff asserts that the ALJ's finding that he suffered no episodes of decompensation of extended duration, *see* Record at 20, is based on a miscalculation of the number of days he was hospitalized in March 2016. *See* Statement of Errors at 13 n.4. However, he does not contend that the purported error matters. *See id*. Any such argument, accordingly, is waived. *See, e.g., United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

## C. The Opinions of the Plaintiff's Treating Sources

The plaintiff finally argues that the ALJ erred in rejecting the opinions of two treating sources, Dr. Hallbert and N.P. Ort, "out of hand for no good reason." Statement of Errors at 13-14. Again, I find no error.

In March 2014, Dr. Hallbert provided both physical and mental RFC opinions. *See* Record at 472-80. He assessed a number of physical restrictions, including an ability to stand and/or walk for less than two hours in an eight-hour workday, and indicated that the plaintiff was either unable to meet competitive standards or had no useful ability to function with respect to each of the mental abilities and aptitudes needed to perform unskilled work. *See id*. at 474, 477.

The ALJ noted that "Dr. Hallbert's assertion that the [plaintiff] is limited to standing and walking for less than even 2 hours total during an[] 8-hour day is not supported by any clinical observations" and in fact was "inconsistent with Dr. Hallbert's own observations that the [plaintiff] ha[d] normal gait and station." *Id*. at 23 (citation omitted). He added that there were "no objective tests to support such limitations (e.g. EMG or MRI studies)." *Id*.

With respect to Dr. Hallbert's mental RFC opinion, the ALJ noted that Dr. Hallbert was not a specialist in the area of mental health issues and did not prescribe the plaintiff's psychotropic medications and that his opinion was "inconsistent with other substantial evidence, including opinions from . . . Dr. Stahl and Dr. Warren." *Id*. He accorded the opinion "little weight because of the minimal clinical signs provided by [Dr. Hallbert] and because he d[id] not treat the [plaintiff] for mental health issues." *Id*.

The plaintiff contests the ALJ's finding that Dr. Hallbert's standing/walking limitation was unsupported by clinical observations or objective evidence, pointing to a 2008 MRI, Dr. Hallbert's reference to x-rays revealing spondylosis and degenerative joint disease, and his observations in

13

March 2014 that the plaintiff ambulated slowly and exhibited abnormal motor strength and limited range of motion. *See* Statement of Errors at 14.

However, as the commissioner notes, *see* Opposition at 16, when asked to describe the medical or clinical findings that supported his assessment of exertional limitations, including those in standing and/or walking, Dr. Hallbert noted only shortness of breath with little activity, *see* Record at 478, and the plaintiff fails to acknowledge that the ALJ also found Dr. Hallbert's standing/walking limitation inconsistent with his own treatment notes repeatedly reflecting a normal gait, *see* Record at 23. The ALJ, accordingly, supplied the requisite good reasons for declining to adopt Dr. Hallbert's standing/walking limitation. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (the commissioner "will always give good reasons in [her] notice of determination or decision for the weight [she] give[s] [a claimant's] treating source's medical opinion").

The plaintiff next faults the ALJ's rejection of Dr. Hallbert's mental RFC opinion, asserting that, while the finding that Dr. Hallbert was not a psychiatrist was a reasonable assumption, it is unsupported by the record, and the opinions of Drs. Stahl and Warren do not constitute substantial evidence of his mental RFC. *See* Statement of Errors at 14. The plaintiff adds that Dr. Hallbert was relying on his own firsthand observation that he could be paranoid and threatening. *See id*.

As the commissioner rejoins, *see* Opposition at 15, the ALJ reasonably concluded that Dr. Hallbert did not treat the plaintiff for mental health issues, Dr. Hallbert having stated that he was "not the treating psychologist[,]" Record at 472. For the reasons discussed above, I have rejected the plaintiff's argument that the Stahl and Warren opinions do not constitute substantial evidence of his mental RFC. Finally, the ALJ reasonably characterized Dr. Hallbert as having provided "minimal clinical signs" in support of his highly restrictive mental RFC opinion: when asked to describe the clinical findings that demonstrated the severity of the plaintiff's mental impairments

14

and symptoms, he stated only that the plaintiff had a "very flat affect but speaks in [a] very angry [and] confrontational manner[,]" was "paranoid[,]" and refused to give detailed answers to some questions. *Id*. The ALJ, accordingly, provided the requisite good reasons for his handling of the Hallbert mental RFC opinion. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c); *Rigby v. Astrue*, No. 1:11-cv-110-JAW, 2012 WL 282988, at *4 (D. Me. Jan. 30, 2012) (rec. dec., *aff'd* Feb. 21, 2012) ("Inconsistency with other evidence of record and the expressing of opinions in an area outside of a physician's area of specialty are valid reasons for assigning less weight to the opinion of a treating source.").

In March 2014, N.P. Ort also provided a mental RFC opinion, indicating that the plaintiff was seriously limited in a number of the mental abilities and aptitudes needed to perform unskilled work and could perform several others in a limited but satisfactory fashion. *See* Record at 481-85. The ALJ gave her opinion partial weight, explaining:

> While she has prescribed medication for the [plaintiff] . . ., she is not an acceptable medical source within the meaning of the Social Security Act. Further, at the time of her March 2014 opinion, she had provided only limited treatment. This opinion is also internally inconsistent. While she asserted that the [plaintiff] would miss about four days of work per month due to his medical problems, she also asserted that [he] had no areas of inability to meet competitive standards.

*Id*. at 23-24 (citations omitted).

The plaintiff contends that the fact that N.P. Ort was not an acceptable medical source was not a valid reason for discounting her opinion and that her finding that he would miss about four days of work per month due to his medical problems was not inconsistent with her finding that he was seriously limited in many mental abilities and aptitudes. *See* Statement of Errors at 14-15.

Nonetheless, because N.P. Ort was not an acceptable medical source, the ALJ was obliged only to "explain the weight given to" her opinion "or otherwise ensure that the discussion of the evidence . . . allows a claimant or subsequent reviewer to follow [his] reasoning[.]" Social Security

15

Ruling 06-03p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2017) ("SSR 06-03p"), at 331. The ALJ satisfied that obligation here.[5]

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 27th day of July, 2018.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge

---

[5] The plaintiff makes two further points that hinge on the success of one or more of his earlier ones: that the ALJ's errors in handling pertinent medical opinion evidence undermined his mental RFC determination and that the ALJ erred in relying on vocational testimony predicated on his flawed physical and mental RFC determinations. *See* Statement of Errors at 15-17. Should the court agree that the predicate points fail, these points do, as well.